# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,* | Case No. 0:26-CV-00324-ECT-ECW |
| Plaintiffs, | |
| v. | **DECLARATION OF LINDSAY VOGT** |
| KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,* | |
| Defendants. | |

## DECLARATION OF LINDSAY VOGT

I, Lindsay Vogt, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Lindsay Vogt. I am 51 years old. I have lived here in Minnesota since 2016. I have been a United States citizen since birth. I currently live in Minnetonka, Minnesota.

2. I live in a house near the corner of Shores Boulevard and Minnetonka Boulevard. I rent and occupy the house and work closely with the owner on property upgrades.

3. Last fall, after a significant storm, my house, along with many of the other houses in our neighborhood, suffered hail damage. Many of the houses near us are getting roofs and siding redone.

4. Since around mid-December, I have been having roofing and siding work done on my house through a contractor. When the weather has been acceptable enough to do work, there are generally two or three workers every day working on the house. I did not speak to the workers every day, but throughout the course of the project, the workers who came to the house varied, and they were not the same every day. They have completed the roof work and continue to work on the siding around the house.

5. On January 8, 2026, I was working at home. I work in front of a big window facing Shores Boulevard. Two male workers—both of whom appear to be Latino—were working on the siding at the back of the house. The supplies that they were using were stored at the front of the house on the driveway and near the road.

6. Around 11 a.m., one of the workers came to the front of the house to get some supplies. The other worker was in the back and not visible. Suddenly, without warning, two to three unmarked cars pulled up from both directions, and around six masked officers with vests

1

that said "POLICE," "ICE," and "ERO" got out. Before anyone could react, they came onto the front lawn of my property and onto my driveway and approached the worker.

7.  I was shocked. I immediately ran out of my house, began recording the incident, and yelled at them to "get out of here."

8.  A couple of the officers stopped moving at this point, but the other officers did not stop or retreat from my property. They continued to approach the worker, who put his hands up and made no attempt to flee or resist arrest. Two of the officers put the worker's hands behind the back and put handcuffs on him. While his hands were handcuffed and as I was telling them to "get out of here," two more officers came onto my driveway.

9.  One of the officers said, "Let's go," and the four officers led the worker off my property and into one of their vehicles.

10. The whole interaction lasted fifteen to thirty seconds. I did not hear them ask the worker any questions or ask him to show any identification before they arrested him. I did not see or hear the worker say anything. I did not see any of the officers show any paperwork to the man that they arrested. There was no time for any of them to ask the worker about any community ties, how long the worker has been living or working in Minnesota, his family here, or anything else about his circumstances. And I later learned from neighbors that they had seen masked people in cars driving up and down our neighborhood's streets prior to this arrest.

11. The other worker was in the back and not visible at the time, so there was no indication that they were looking for the worker they took specifically. It seems possible that they just found a Hispanic or Latino man doing construction work, and took him away.

12. At no point did anyone show me a warrant or respond to my instructions to get off of my property. There was no explanation given to me for why they conducted this arrest and no indication that they were looking for this man in particular.

13. I am concerned by this incident. I am shaken, and I am having trouble sleeping at night. I cannot stop thinking about the incident. I felt helpless that I could not talk to or stop the ICE officers from them. No part of this arrest made me feel safer. I trusted these workers. Quite the opposite, as ICE officers showed up without warning or explanation, came onto my property, and did not even make any effort to talk with the person they arrested—much less me or my neighbors—about what was going on. They simply kidnapped a man at his job in front of my house.

14. As I hear news reports about ICE arrests throughout the Twin Cities, it frightens me that these cold and seemingly random arrests, which have the feeling of abductions, are going on in my hometown.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 14, 2026.

Lindsay Vogt