# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,*<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,*<br><br>　　　　　　　　　　Defendants. | Case No. 0:26-CV-00324-ECT-ECW<br><br>**DECLARATION OF SANTIAGO DOE** |

## DECLARATION OF SANTIAGO DOE

I, Santiago Doe, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is Santiago Doe. I am 55 years old. I am originally from Honduras and am Latino. I have lived in the United States since 1995 and in Minnesota since 2016. I currently live in New Hope. My two daughters are both U.S. citizens.

2. I previously had Temporary Protected Status for Honduras, but I did not have the money to re-register. My daughter, who is a United States citizen, filed an I-130 petition for me around three years ago, so that I can become a lawful permanent resident. My immigration attorney also helped me submit an application before USCIS in December 2025.

3. I am a maintenance worker with expertise in plumbing and electrical. I also work as a handyman. I am currently employed by Marathon Management, a Minnesotan property management company. I have worked for Marathon Management for about ten years, since 2016. I work for them at various apartment buildings that they manage—from the Twin Cities metropolitan area to Farmington to Hutchinson. I have a social security number, and I pay taxes every fifteen days as part of my paycheck.

4. On December 12, 2025, I was working at one of Marathon Management's properties in Chaska, Minnesota. I needed a faucet, so I drove to pick one up. I was driving a work truck with ladders on it. The car is registered in my name. I have a driver's license. The registration was correct, and there were no problems with the registration.

5. I picked up the faucet at the Home Depot on Pioneer Trail in Chaska. When I walked back to my work truck, I did not see anyone being stopped or any unusual activity in the parking lot. I then stopped for lunch at Culver's, which is located in the same complex as Home Depot. I got the food to go.

1

6. As I began driving back to the work site, about a quarter-mile from Culver's, I saw three or four big vans—one was cream-colored—behind me. I changed lanes, and the van also changed lanes. I then saw the van turn on its emergency lights, so I immediately pulled over to the side of the road. Two vans pulled over behind me, and one van pulled over in front of me and cut me off.

7. At first, I thought that the police had pulled me over. I was uncertain why they were stopping me because I was obeying all traffic laws and have no warrant out for my arrest.

8. Six officers exited the vehicles and came up to me. The officers were wearing vests saying "ICE" and masks covering their faces. I realized that the officers were actually U.S. Immigration and Customs Enforcement ("ICE") officers.

9. Two of the ICE officers—the ones who exited the car in front of me—came up to my window. They came up to me and said, "Santiago Doe, get out of the car." They arrived at me very aggressively, and the two officers were very agitated. You could see it in their eyes. When they said, get out of the car, I said, calm down. I did not want them to hit me. They told me that I'm going to be deported.

10. I have no idea how they knew my name. I do not have any criminal record.

11. I got out of the car. I put my hands in the air and on my car. They asked if I had a weapon, and I told them no. I complied with all of their instructions. Still, they patted me down and took everything out of my pockets. They handcuffed my hands together.

12. They put me in a different car with two Spanish-speaking agents and drove to a nearby hospital parking lot. There, they put additional shackles on my belt and on my ankles.

13. They asked me for my identification. I gave them my driver's license and told them that my social security card was at home. I told them that I have a pending petition through my

2

daughter. They told me that my petition has not been approved so it is not valid.

14. They took all of my documents and items, so I asked them if I could have my phone to call my daughter. They said I could make this call because I cooperated with them. I called my daughter to let her know what was happening.

15. After I made the call, the officers took me to another parking lot, and we waited for two to three more hours while they tried to pick up more people. They left my own car behind, and I understand that my daughters had to go pick it up.

16. At no time did any of the ICE officers ask me about how long I had been living in the United States, any community ties that I had, or about my family in Minnesota.

17. After a couple of hours waiting, the ICE officers brought me to their office near Bloomington, about 30 to 40 minutes away. They did not ask any further questions. In Bloomington, they took my fingerprints and then put me in a holding cell. I was there for four to five hours. The cell was like a freezer. Probably 25 to 30 of us were in the cell.

18. Then they transported me with 11 other detainees to Freeborn County Jail, where I am right now. They put the handcuffs and shackles back on for this transport.

19. I am currently still incarcerated at Freeborn County Jail. My family has been able to put money into a jail account that I can call them. But I have still not received explanation as to why I was arrested and remain detained. Nor have I received any kind of promise that I will not be subject to arrest or detention by ICE or other law enforcement officials for immigration purposes in the future.

20. Although I was arrested a month ago, I do not even appear in the ICE detainee locator system or the EOIR case tracker system. I have not yet had a bond hearing—or any hearing—before an immigration judge, although I understand that I may be scheduled to

have one tomorrow.

21. Since 1995 when I entered this country, this is the first and only time I have been stopped by law enforcement. I have not had any other interactions with law enforcement. Beyond traffic violations, I have never been convicted of any crime or offense.

22. I am deeply concerned and scared by this incident. I am the head of the household. Without my income, it is hard for my family to manage financially while I am detained. My daughter is in college, and I am paying the tuition for her college. I remain worried about my family members. My family is everything to me.

23. I feel like I was treated like a criminal. It is very hard to have had this happen to me. You have to remain very strong.

24. I do not know why the ICE officers have continued to detain me. I do not pose any danger to the community, as I have lived over 30 years in this country, and I am not a flight risk. I have a pending application to become a lawful permanent resident through my daughter. If I were released, I would attend every immigration court and appointment.

25. If I were released, I am scared that this would happen again because I will continue to drive around to go to work. I want to feel calm while driving and working.

26. I came to the United States for a better life. People come to this country for a better life. I believe I have found that here. I have built a long life in the United States. I have lived here for 31 years. I have paid taxes for years. I pay taxes every 15 days, every paycheck.

27. I am afraid of retaliation that my family and I may face if my identity were to become public as a result of my participation in this lawsuit. I am afraid that my family members and I will be retaliated against and harassed by members of the public on social media

given recent reports about people harassing noncitizens online. I also have a pending case in immigration court and a pending application before USCIS.

28. This declaration was read to me in full in Spanish on January 12, 2026 by Margo Scott. I completely understand the content of this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 12, 2026.

<u>s/Santiago Doe</u><br>
Santiago Doe

I, Margo Scott, a paralegal at Greene Espel PLLP, affirm Santiago Doe gave me permission to sign this declaration on his behalf because he is currently detained. At 10:57 a.m. on January 12, 2026, I read the above Declaration back to Santiago Doe word for word to confirm its accuracy and he stated that it was accurate.

Executed on January 13, 2026.

Margo Scott