## AMICUS CURIAE BRIEF

## IN SUPPORT OF PLAINTIFFS AND IN SUPPORT OF THE COURT'S PRELIMINARY INJUNCTION

## (ON TYRANNY, CIVIC RESISTANCE, AND CONSTITUTIONAL CHANGE BEYOND THE BALLOT)

### UNITED STATES DISTRICT COURT

### DISTRICT OF MINNESOTA

Mubashir Khalif Hussen, et al.,

Plaintiffs,

v.

Kristi Noem, Secretary, Department of Homeland Security, et al.,

Defendants.

### STATEMENT OF INTEREST OF AMICUS CURIAE

Amicus Curiae Elder Mmoja Ajabu submits this brief pro se as Director of Pan-Afrikan Affairs for the Black Panther Movement, an organization historically and contemporaneously engaged in community defense, constitutional accountability, and resistance to tyranny through lawful civic means.

Amicus has a substantial interest in this matter because it implicates not only individual constitutional rights, but the ability of the people to restrain, reform, or replace tyrannical governance when ordinary electoral mechanisms are rendered ineffective or obstructed.

No party's counsel authored this brief in whole or in part, and no person or entity other than Amicus funded its preparation.

### SUMMARY OF ARGUMENT

This case presents a foundational constitutional truth:

The American system does not confine resistance to tyranny to the ballot box alone.

While voting is a primary mechanism of democratic change, the Founders understood that elections can fail, be manipulated, or be rendered meaningless under conditions of coercion or repression. For that reason, the Constitution protects additional, non-electoral mechanisms by which citizens may lawfully oppose and change tyrannical government conduct.

These mechanisms include:

Protest and assembly

Petition and grievance

Observation, documentation, and exposure of abuse

Judicial challenge and injunction

Collective withdrawal of consent

And any other means necessary.

When federal agents suppress these activities, they do not merely violate individual rights—they attack the constitutional infrastructure that allows non-violent change when voting alone is insufficient.

The Court's injunction therefore protects not disorder, but constitutional continuity.

## ARGUMENT

### I. TYRANNY IS A CONSTITUTIONAL CONDITION THE COURT IS OBLIGATED TO RESTRAIN

The Framers treated tyranny as a structural danger, not a political insult.

The Declaration of Independence identifies tyranny as a pattern of abuses that justifies alteration or abolition of destructive governance.

Federalist No. 47 warns that unchecked power is itself tyranny.

The Constitution embeds resistance tools precisely because elections alone may not suffice.

Courts are charged with intervening before tyranny becomes normalized, not after it is complete.

### II. ICE AND DHS REGULATIONS CONFIRM THE LIMITS OF EXECUTIVE POWER

Federal immigration officers are constrained by both constitutional law and binding regulations.

#### A. 8 C.F.R. § 287.8 — Standards for Enforcement Activities

Under 8 C.F.R. § 287.8, ICE officers may use only minimum non-deadly force, escalating only in response to specific, articulable threats.

Peaceful protest, lawful observation, and presence in public spaces do not constitute justification for detention or force under this regulation.

Suspicion-less stops and crowd-control tactics against civilians therefore violate ICE's own standards, independent of constitutional violations.

#### B. DHS Use of Force Policy (Management Directive 044-05)

DHS policy mandates that all force be:

Objectively reasonable

Proportionate

Consistent with constitutional standards, including Graham v. Connor

Force used to deter protest, intimidate observers, or chill civic participation cannot meet this standard.

#### C. ICE Directive 19009.3 — Firearms and Use of Force

ICE's directive restricts force to what is necessary to accomplish a lawful law-enforcement objective.

Suppressing protest, discouraging observation, or punishing dissent is not a lawful immigration objective.

Using immigration authority as a substitute for domestic political control constitutes executive overreach.

### III. IMMIGRATION AUTHORITY DOES NOT SUSPEND CIVIC MECHANISMS OF CHANGE

Although 8 U.S.C. § 1357 grants limited arrest authority, it does not:

Override the First Amendment

Permit suspicion-less stops

Authorize suppression of protest or observation

Eliminate non-electoral constitutional remedies

As the Supreme Court explained in Youngstown Sheet & Tube Co. v. Sawyer, executive necessity does not displace constitutional limits.

### IV. CITIZENS POSSESS A RIGHT—AND AT TIMES A DUTY—TO OPPOSE AND CHANGE TYRANNY BY MEANS OTHER THAN THE VOTE

The American constitutional tradition does not confine tyrannical political change exclusively to elections.

The Founders recognized that when:

Power suppresses dissent

Speech is chilled

Protest is punished

Observation is criminalized

then electoral remedies alone are insufficient.

Accordingly, the Constitution protects mechanisms of resistance, including:

Peaceful mass protest

Civil disobedience

Petition and grievance

Judicial intervention

Collective refusal to acquiesce in unlawful authority

And any other means necessary to resist tyranny.

These actions are not anti-democratic.

They are democracy's last line of defense.

Suppressing these activities transforms government from representative authority into coercive domination—the defining characteristic of tyranny.

## V. TYRANNY IS MEASURED BY PATTERN AND EFFECT, NOT BY OFFICIAL INTENT

Good faith assertions do not negate tyranny.

Tyranny is established by:

Repeated constitutional violations

Disproportionate impact on racialized or politically distinct communities

Use of force beyond regulatory authorization

A chilling effect on lawful resistance mechanisms

Each is present here.

The Court correctly identified irreparable harm.

## VI. HISTORICAL EXPERIENCE CONFIRMS THE NECESSITY OF NON-ELECTORAL RESISTANCE

Historically marginalized communities—particularly communities of African descent—have repeatedly faced conditions where:

Voting rights were formally preserved but practically nullified

Surveillance and force replaced consent

Courts became the only viable restraint

This historical reality is relevant to assessing the necessity of judicial protection for protest and observation.

Courts may properly consider this context when determining constitutional injury.

## CONCLUSION

The Court's injunction:

Enforces constitutional limits

Enforces ICE and DHS regulations

Preserves lawful mechanisms by which citizens may resist, reform, or replace tyrannical governance when voting alone fails

To weaken it would criminalize constitutional resistance and reward executive overreach.

A government that fears peaceful resistance has already departed from democratic legitimacy.

Amicus respectfully urges the Court to maintain and enforce its injunction in full.

RESPECTFULLY SUBMITTED

*[signature]*

Elder Mmoja Ajabu

Amicus Curiae, Pro Se

Director of Pan-Afrikan Affairs

Black Panther Movement

P.O. Box 2696

Indianapolis, IN 46206

United States of America

1 844 848 6489 x3

Date: January 19, 2026