# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol*,<br><br>*Defendants*. | Case No. 0:26-cv-324-ECT-ECW<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT RECORD** |

## INTRODUCTION

Given Operation Metro Surge's evolving and ongoing effects, and Defendants' arguments in their opposition that the challenged policies do not exist, Plaintiffs move for leave to supplement the record with twenty-seven witness declarations (the "supplemental declarations"), including five that were publicly filed in *Minnesota v. Noem*, No. 0:26-cv-190-KMM-DJF (D. Minn.).[1] The supplemental declarations demonstrate that Defendants' unlawful policies continue, and supplementation will not cause Defendants any prejudice.

Defendants do not oppose the supplementation but dispute its timing. Plaintiffs propose that Defendants respond to the supplemental declarations—filed with this motion—by **February 5, 2026**, and that the Court retain the hearing scheduled for **February 9, 2026**, and convert it into an evidentiary hearing. Conversely, Defendants contend that Plaintiffs should not submit the supplemental declarations until February 5, after which Defendants may respond to the evidence. Defendants' proposal would cause needless delay. Defendants have immense resources, including ICE funding that has skyrocketed and 2,000 federal agents in Minnesota alone. Defendants can, and should be required to, submit any responses by February 5.

The Court should also hold the hearing as scheduled on February 9, and the parties should be allowed to present live witness testimony, an issue that the Court held open during the Scheduling Conference. *See* ECF No. 75 at 2. Every day that Defendants are

---

[1] Plaintiffs are filing the supplemental declarations concurrently with this Motion because of the expedited schedule on Plaintiffs' Motions and to provide Defendants as much notice and opportunity to respond as possible.

1

allowed to carry out their policies of widespread stops and warrantless arrests is another day that denies Minnesotans' fundamental rights. Plaintiffs respectfully request that they have the chance to present the evidence—including in person—as soon as possible.

## LEGAL STANDARD

The Court should exercise its discretion and grant Plaintiffs' motion to supplement the record. Courts have broad discretion to consider newly collected evidence, particularly where the evidence will help the Court in determining the merits of the parties' claims. *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1020 (D. Minn. 2000) (allowing supplemental affidavits from witnesses with more up-to-date information on availability of advertised products in a false advertising action); *Ortiz–Alvarado v. Gomez*, Civ. No. 14-209 (MJD/SER), 2014 WL 3952434, at *3 (D. Minn. Aug. 13, 2014) (granting motion to supplement because information was not previously available and was relevant to class certification issues). Allowing supplementation is particularly appropriate where the non-movant will not be prejudiced. *See Ortiz-Alvarado*, 2014 WL 3952434, at *3; *see also Tincher v. Noem*, No. 25-cv-04669 (KMM/DTS), slip op. (D. Minn. Jan. 2, 2026) (allowing plaintiffs to submit supplementary declarations and providing defendants an opportunity to respond).

## ARGUMENT

**I.     Good cause exists to supplement the record.**

Operation Metro Surge has continued after Plaintiffs filed their Motion for a Preliminary Injunction and Motion for Provisional Class Certification and Appointment of Class Counsel on January 16, 2026 (together, "Plaintiffs' Motions"). Defendants have

2

continued their daily, widespread immigration stops and warrantless immigration arrests. *See e.g.*, Harvick Decl. ¶ 6 (ECF No. 83) (relaying federal agents "regularly engage" in detentions and arrests as part of Operation Metro Surge). After the federal government signaled an unspecified shift in enforcement actions, Defendants nevertheless continued to detain individuals at unprecedented levels.[2] On January 29, 2026, President Trump said that "he would not pull back the operation, 'not at all.'"[3] And Thomas Homan, the president's "border czar" recently sent to Minnesota, has given no timeline for the operation and said that he's "staying until the problem's gone."[4]

Minnesotans subject to unlawful stops and arrests have continued to come forward (although not without significant trepidation),[5] and the Court should allow Plaintiffs to supplement the record to provide the most up-to-date information about Defendants' pattern, practice, and policies. *See Ortiz–Alvarado v. Gomez*, 2014 WL 3952434, at *3 (D.

---

[2] Susan Du and Christopher Magan, *Is ICE Rolling Back Operations In Minnesota? It's Hard To Tell.*, Star Trib. (Jan. 27, 2026), https://www.startribune.com/ice-minnesota-change/601571796.

[3] Zolan Kanno-Youngs, *Trump Called for 'De-Escalation' In Minneapolis. It Didn't Last Long.*, N.Y. Times (Jan. 30, 2026), https://www.nytimes.com/2026/01/30/us/politics/trump-minneapolis-dueling-messages.html.

[4] Giovanna Dell'Orto & Rebecca Santana, *Trump's Border Czar Suggests A Possible Drawdown In Minnesota, But Only After 'Cooperation,'* AP News (Jan. 29, 2026), https://apnews.com/article/homan-minneapolis-immigration-enforcement-0d559bf53b630d7cc525fd3219f430ba.

[5] Given justifiable concerns about retaliation, Plaintiffs are filing the supplemental declarations temporarily under seal in accordance with Local Rule 5.6 to protect the identity of the declarants. Declarations with the names redacted are being filed publicly. The parties will, by the appropriate time, file a Joint Motion Regarding Continued Sealing, as required by Local Rule 5.6.

3

Minn. Aug. 13, 2014). Of the twenty-seven supplemental declarations, five were publicly filed by Plaintiffs in *Minnesota v. Noem*, No. 0:26-cv-190-KMM-DJF (D. Minn.). Four are declarations from immigration attorneys regarding the scope of Operation Metro Surge. The remaining eighteen are direct witness declarations. Twelve declarations come from individuals who were stopped or arrested in the days just before Plaintiffs filed their motions; these individuals either were unable to meet with Plaintiffs' counsel until after Plaintiffs filed their Motions or only contacted Plaintiffs' counsel after. The remaining declarations come from witnesses who were subjected to or witnessed stops or arrests that occurred after Plaintiffs filed their motions. Supplementing the record is necessary because Operation Metro Surge is ongoing, and this evidence underscores the continued need for immediate injunctive relief.

**II.    The supplemental declarations will assist the Court in deciding Plaintiffs' Motions.**

Defendants respond to Plaintiffs' Motions with two main arguments. First, Defendants argue that Plaintiffs do not have standing because they cannot show a sufficient likelihood "of imminent future" unlawful stops or arrests. *See e.g.*, Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF No. 81) at 15, 22, 33–38; Def.'s Opp'n to Pl.'s Mot. for Provisional Class Cert. (ECF No. 86) ("Class Opp'n") at 16–18. Second, Defendants argue that Plaintiffs cannot demonstrate commonality because Plaintiffs have only anecdotal evidence of unlawful stops and arrests, which is insufficient to show that Defendants engaged in a policy, practice, or pattern. *See, e.g.*, Class Opp'n at 29.

The supplemental declarations will help the Court decide both issues because the declarations establish that Defendants' unlawful conduct is both continuing and widespread. And the supplemental declarations show that Defendants' unlawful conduct is not limited to a few unconnected instances, but that Defendants are instead executing a broader pattern, practice, and policy of stopping individuals without reasonable suspicion that they have committed crimes or immigration violations. Like the additional affidavits allowed in *Surdyk's Liquor, Inc.*, the supplemental declarations here give the Court up-to-date information about Defendants' daily and ongoing misconduct. In short, the supplemental declarations will give the Court better information—and a fuller picture—from which to decide Plaintiffs' Motions.

### III. The supplemental declarations will not prejudice Defendants.

Allowing Plaintiffs to supplement the record will not prejudice Defendants because the declarations address issues that Defendants have already raised and address conduct already known to Defendants. The supplemental declarations fall squarely within the existing record. They address the same unlawful activity already discussed at length in the Complaint, Plaintiffs' Motions, and the already-filed declarations supporting Plaintiffs' Motions: stops without reasonable suspicion and arrests without probable cause. Put another way, the declarations demonstrate continuing actions to carry out policies set by Defendants themselves; nothing in them should come as a surprise.

Furthermore, although the supplemental declarations address arguments that Defendants first raised in their oppositions to Plaintiffs' Motions, Defendants may still investigate and respond to the supplemental declarations. Indeed, Defendants do not

5

oppose supplementing the record; they only could not agree with Plaintiffs as to the schedule for their response. To the extent that Defendants have additional information about Operation Metro Surge as it has continued in the past two weeks, the Court can benefit from that information, as well.

**IV.    The Court should keep the February 9, 2026 hearing date and allow live witness testimony.**

Given the ongoing and daily harms related to Operation Metro Surge, Plaintiffs request that the Court require Defendants to investigate and file their response, if any, swiftly. As noted above, Operation Metro Surge has not lessened in scope or intensity, as evidenced (in part) by the torrent of habeas petitions inundating the District of Minnesota. Minnesotans—even children—continue to be unlawfully stopped and arrested pursuant to Defendants' unlawful policies as they go about their daily lives.

Given the widespread and ongoing harms that Defendants are inflicting daily, Plaintiffs respectfully request that the Court retain the hearing date currently scheduled for **February 9, 2026**. To give the Court time to review the parties' submissions, Plaintiffs propose that Defendants respond to the supplemental declarations by **February 5, 2026**, three days from today and the same day that Plaintiffs' reply briefs are due. Plaintiffs submit that this schedule properly balances the exigency of the situation with Defendants' right to respond.

Based on the parties' meet and confer, Defendants oppose this timing, suggesting instead that Plaintiffs submit the supplemental declarations by February 5, with Defendants' response, if any, due the following week. This timing would necessarily

jeopardize the Court's ability to keep the February 9 hearing date, and Plaintiffs cannot afford further delay in obtaining relief. Defendants have substantial resources[6]—including over 2,000 federal agents in Minnesota—and should be able to collect any relevant information and provide responses before the hearing. Defendants' actions in Minnesota are unprecedented, and they are changing Minnesotans' way of life every single day. Plaintiffs respectfully suggest that time is of the essence, and that moving the hearing by even a day would be one day too many.

Finally, in its scheduling order, the Court observed that "[t]hough no party has requested the opportunity to introduce live witness testimony at this hearing, either party may make that request, and I may order that live witness testimony be presented, at the February 9 hearing." ECF No. 75 at 2. Having reviewed Defendants' oppositions, Plaintiffs respectfully request that the Court permit live witness testimony at the upcoming hearing, so it can assess witness credibility. Plaintiffs are prepared to present live witness testimony on February 9.[7] Plaintiffs proposed a mutual exchange of lists of likely-to-call witnesses on Tuesday at 9:00 a.m. (CT). And after the Court confirms the hearing date, the parties can meet and confer about a schedule to exchange and file final witness lists.

---

[6] Bill Chappell, *How ICE Grew To Be The Highest-Funded U.S. Law Enforcement Agency*, NPR (Jan. 21, 2026), https://www.npr.org/2026/01/21/nx-s1-5674887/ice-budget-funding-congress-trump.

[7] Plaintiffs understand that Defendants do not oppose an evidentiary hearing, only whether such a hearing can occur on February 9.

7

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to Supplement the Record with the supplemental declarations.

Dated: February 2, 2026                          s/ Michelle E. Morrow

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION IMMIGRANTS' RIGHTS PROJECT**

Spencer Amdur*
Oscar Sarabia Roman*
425 California Street, 7th Floor
San Francisco, CA 94104
T: (415) 343-0770
samdur@aclu.org
osarabia@aclu.org

Kathryn Huddleston*
Lucia Goin*
915 15th Street NW, 7th Floor
Washington, D.C. 20005
T: (212) 549-2500
khuddleston@aclu.org
lgoin@aclu.org

Omar C. Jadwat*
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
ojadwat@aclu.org

**COVINGTON & BURLING, LLP**

Robert Fram*
415 Mission Street, Suite 5400
San Francisco, CA 94105
rfram@cov.com
415-591-7025

Gregg Levy*
Paul Killebrew*
850 Tenth Street, NW
Washington, DC 20001
glevy@cov.com
pkillebrew@cov.com

**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**

Teresa Nelson (#269736)
Catherine Ahlin-Halverson (#350473)
Alicia Granse (#400771)
Benjamin Casper (#0276145)
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692
tnelson@aclu-mn.org
cahlin@aclu-mn.org
agranse@aclu-mn.org
bcasper@aclu-mn.org

Ian Bratlie (#319454)
424 N. Riverfront Dr. No. 34
Mankato, MN 56001
Tel: (507) 995-6575
ibratlie@aclu-mn.org

**GREENE ESPEL PLLP**

Amran A. Farah, Reg. No. 0395354
Aaron P. Knoll, Reg. No. 0393066
Benjamin Larson, Reg. No. 0504146
Michelle E. Morrow, Reg. No. 0504419
Nicholas Scheiner, Reg. No. 0402470
Kshithij Shrinath, Reg. No. 0505164
X. Kevin Zhao, Reg. No. 0391302
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
afarah@greeneespel.com
aknoll@greeneespel.com
blarson@greeneespel.com
mmorrow@greeneespel.com
nscheiner@greeneespel.com
kshrinath@greeneespel.com
kzhao@greeneespel.com
(612) 373-0830

| | |
|---|---|
| Bree Peilen*<br>30 Hudson Yards<br>New York, NY 10001<br>bpeilen@cov.com | **ROBINS KAPLAN, LLP**<br><br>Raoul Shah, Reg. No. 0399117<br>Bahram Samie, Reg. No. 0392645<br>Ellen Levish, Reg. No. 0400878<br>Stacey Slaughter, Reg. No. 0296971<br>800 LaSalle Avenue, Suite 2800<br>Minneapolis, MN 55402<br>rshah@robinskaplan.com<br>bsamie@robinskaplan.com<br>elevish@robinskaplan.com<br>sslaughter@robinskaplan.com<br>(612) 349-8500<br><br>*Attorneys for Plaintiffs* |

\* *Admitted Pro Hac Vice*