# EXHIBIT 12

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,*<br><br>Defendants. | Case No. 0:26-cv-324-ECT-ECW<br><br><br>**DECLARATION OF N.G.**<br><br>(***Redacted Version***) |

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,*<br><br>                    Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,*<br><br>                    Defendants. | Case No. 0:26-CV-00324-ECT-ECW<br><br>**DECLARATION OF N.G.** |

## DECLARATION OF N▮▮▮▮ G▮▮▮▮

I, N▮▮▮▮ G▮▮▮▮, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am over the age of 18 years old and I am a resident of the State of Minnesota. My husband and I are both U.S. citizens. Because I am concerned about retaliation against myself or my family, I ask that this declaration be submitted with my name redacted, but if necessary, I would be available to testify to the facts described below.

2. On Wednesday morning, January 14, 2026, my husband and I were parked in our truck on a residential block of 50th Avenue North in New Hope, Minnesota facing Winnetka Avenue. My husband (who is Latino, and was naturalized in 2016) was in the driver's seat, and I was in the front passenger seat.

3. There were no protest activities or ICE vehicles on scene at the time we parked our car and the block appeared to be quiet. As we sat in our vehicle, we had the engine running to stay warm, but were fully parked.

4. While in our parked car, my husband observed what he believed to be several ICE vehicles driving one direction, then the other, on Winnetka Avenue, passing by where we were parked. At one point, my husband observed a masked ICE agent staring directly at my husband as their vehicle passed.

5. Moments later, three ICE vehicles were on 50th Avenue and sped towards our vehicle. One ICE vehicle rammed our truck from behind, another pointed diagonally at the side of our vehicle, and another pulled diagonally in front of our vehicle, boxing us in. I began recording the interaction that followed on my cell phone, and that video is available at https://www.youtube.com/watch?v=AEby6gxThRw. The video does not capture the entire

interaction that ensued, because at one point I sent a message from my phone and the video stopped recording. However, it does capture nearly six minutes of the interaction.

6. A masked ICE agent (wearing a vest that said "POLICE") approached our vehicle and when my husband asked, "What's going on? The agent did not answer and instead asked, "Do you have ID?" My husband asked, "What do you hit me for?" and the agent did not respond.

7. My husband immediately provided several forms of ID: his Minnesota-issued Real ID, his Global Entry card, and also paperwork related to his recent United States passport renewal. (For context: my husband's United States passport is not scheduled to expire until March 2026, but he applied to renew it prior to its expiration, which required sending his active passport in with the application. The paperwork he provided to agents on January 14, 2026 is a notice that confirms that his renewed passport application had been processed, including the passport number.)

8. While one agent took my husband's papers back to their vehicle, my husband asked another agent what the reason was we were "pulled over" (in other words, why we had been rammed and boxed in while parked.) The agent responded, "We'll get it figured out in a sec." My husband reminded him they need to have a reasonable cause, and the agent's response was, "just hang tight."

9. Concerned the agents may pull away from the scene without providing us information about their vehicles (affecting our ability to be compensated for damage to our vehicle) I announced I was going to get out of the car to take pictures of their plates. The agent closest to our truck warned me that if I got out of the vehicle, I would be "obstructing" and cited 18 U.S.C. 111.

10. I asked him to provide me a name and badge number, and the masked agent said he was not obligated to provide it and that "Tik Tok has lied to you."

11. When we asked agents what was taking so long, they said they were just "running checks." My husband asked, "Running checks for what?" The agent responded, "To make sure the information you provided is accurate."

12. The agent later asked, "You came in on a visa?" My husband corrected him that no, he is a U.S. Citizen. The agent then asked, "They give you a card whenever you're naturalized, right?" This is not correct, which my husband had to explain to the ICE agent. This interaction is also captured on the video recording.

13. My video stopped recording when I navigated away from the recording screen to send a message. In an unrecorded part of our interaction, an ICE agent told us that the boxing in and ramming our vehicle was "standard operating procedure."

14. At no point in the interaction did agents ask me, a white woman, for my identification or for proof of citizenship.

15. Ultimately, after running checks, ICE agents provided us with a 202 area code phone number in order to pursue a tort claim, and drove away. They never provided us with the officer identification we requested, nor was any provided on the handwritten note with the phone number and the word "tort claims."

Dated: January 20, 2026

N█████ G█████