# EXHIBIT 18
# (*Redacted*)

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,* <br><br> Defendants. | Case No. 0:26-cv-324-ECT-ECW <br><br><br> **DECLARATION OF S.S.** <br><br> (***Redacted Version***) |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MUBASHIR KHALIF HUSSEN, MAHAMED EYDARUS, and JAVIER DOE *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; DAVID EASTERWOOD, *in his official capacity as U.S. Immigration and Customs Enforcement Field Office Director for St. Paul, Minnesota*; U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, *in his official capacity as Commissioner of U.S. Customs and Border Protection*; U.S. BORDER PATROL; MICHAEL W. BANKS, *in his official capacity as Chief of U.S. Border Patrol*; and GREGORY BOVINO, *in his official capacity as Commander-at-Large of U.S. Border Patrol,*<br><br>Defendants. | Case No. 0:26-CV-00324-ECT-ECW<br><br>**DECLARATION OF S.S.** |

### DECLARATION OF ▮▮▮▮▮▮▮▮▮▮

I, S▮ S▮▮▮, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is S▮ S▮▮▮. I am 43 years old. I have been a United States citizen since birth, and I have lived in Minnesota since then. I currently live in Bloomington, Minnesota.

2. On January 21, 2026, around 7:30 a.m., I was in my car in a Starbucks parking lot at the corner of 98th Street and Lyndale Avenue in Bloomington, Minnesota.

3. While I was in the parking lot, I noticed a gray SUV that seemed out of place—it was sitting there idling, had dark tinted windows, and a Texas license plate.

4. I have seen a lot of activity involving U.S. Department of Homeland Security (DHS) and U.S. Immigration and Customs Enforcement (ICE) officers in Bloomington, and something about the out-of-state license plates, tinted windows, and idling car made me feel uneasy. So I sat there in my car to see if anything happened.

5. As I was waiting, an older man—who looked to be East African—exited Starbucks with a girl who looked to be about a teenager. I assumed that the man was the girl's father. The girl was wearing a hijab. The two of them walked to their car; the man got in the driver's side, and the girl got in the backseat.

6. The gray SUV backed out of its spot, drove behind where I was parked, and then parked directly behind the car of the two people who had just exited Starbucks.

7. About five or six people that I understood to be DHS officers came out of the SUV. I thought that they were DHS officers because they had masks and vests that said "Police" on; at least one of the vests said "Federal Agent," and another vest said "U.S. Border Patrol," and they had come out of a car that was unmarked. One of the people who came

out of the car was carrying a professional camera and seemed to be taking pictures or video of the encounter. This person was also wearing a mask and vest.

8. When I saw the officers exit the vehicle, I got out of my car and stood on the sidewalk outside the Starbucks so I could hear, observe, and record what was happening. I thought that this was important to do because I had heard ICE officers were all over the Twin Cities and wanted to support community members in their interactions with officers so that I would be able to witness any violations of people's rights.

9. Once I stood there, I heard one of the officers—about a six-foot tall, White man—ask the driver if he was a U.S. citizen. The photographer pointed his camera at the officer and then toward the driver.

10. I did not hear any of the officers tell the driver say why they stopped him, and I did not hear the driver ask.

11. I tried to tell the driver, "You do not need to answer their questions, they don't have a warrant." The officer who asked the driver about his citizenship looked at me and said, "He's being detained right now, I don't need a warrant to detain somebody and talk to them. You get that thing from TikTok obviously."

12. After the officer said that, he then turned back to the driver and said something to him that I could not hear. He and two other officers stood around as if waiting for something. The photographer was walking around the driver's car with his camera.

13. After a couple of minutes of waiting, another officer in a baseball cap and mask came up to the driver's window and asked for a "residency card."

2

14. I saw the driver provide the officer with his U.S. passport. The officer looked at the passport. After the driver provided the passport, the same officer asked the driver if he was naturalized or not naturalized. The driver said he was not naturalized.

15. After about twenty to thirty seconds, the officers stepped back, told the driver to have a good day, and left. Before they left, the officer who made the "TikTok" comment looked at me and said, "See, too easy, it's too easy."

16. I am white, and at no point did the officers ask me for my identification, proof of citizenship, or residency card.

17. I spoke to the driver and asked him if he was okay. He said that he was, and he thanked me. I understood that he was thanking me for observing and recording what was happening.

18. It made me feel uneasy how many agents there were to one car and two people. I did not know what could have happened. I found the use of the word "detain" to be odd because they did not end up arresting him and they did not have a warrant. I was a little shaken up by witnessing the encounter, and a Starbucks employee thanked me for being there.

19. I have heard that DHS and ICE officers are around the Twin Cities, and I especially have heard that they are present in the Bloomington area, where a lot of Somali and Hispanic people live. I see cars that I believe contain DHS and ICE officers every day and every time that I am out, especially in the morning when I bring my daughter to daycare and when I'm on my way to work. I think they are DHS and ICE officers because of how tinted all the windows are and because the officers have out-of-state license plates, of which there are a lot more than typical. I saw two cars and eight officers—again in masks and vests saying "Police"—in the parking lot of the Bloomington Walmart a few weeks ago. Another day, I was bringing my dog to the vet, and on the side of the road, I saw an unmarked vehicle

that had lights on, and officers with vests that said "Police" despite being unmarked sedans, talking to a construction worker that they had pulled over.

20. As I hear news reports about DHS and ICE encounters throughout the Twin Cities, and see them with my own eyes, it frightens me that these seemingly random stops and arrests are going on in my hometown.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2026.



(Jan 30, 2026 11:37:51 CST)