# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

_____

MUBASHIR KHALIF HUSSEN,
MAHAMED EYDARUS, and JAVIER DOE
*on behalf of themselves and others similarly
situated*,

         Plaintiffs,

v.

KRISTI NOEM, *in her official capacity as
Secretary of the U.S. Department of
Homeland Security*; U.S. DEPARTMENT OF
HOMELAND SECURITY; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT; TODD M. LYONS, *in his
official capacity as Acting Director of U.S.
Immigration and Customs Enforcement*;
DAVID EASTERWOOD, *in his official
capacity as U.S. Immigration and Customs
Enforcement Field Office Director for St.
Paul, Minnesota*; U.S. CUSTOMS AND
BORDER PROTECTION; RODNEY S.
SCOTT, *in his official capacity as
Commissioner of U.S. Customs and Border
Protection*; U.S. BORDER PATROL;
MICHAEL W. BANKS, *in his official
capacity as Chief of U.S. Border Patrol*; and
GREGORY BOVINO, *in his official capacity
as Commander-at-Large of U.S. Border
Patrol*,

         Defendants.

Case No. 0:26-cv-324-ECT-ECW

_____

## DECLARATION OF VALERIE NARCY IN SUPPORT OF AMICUS CURIAE BRIEF

I, Valerie Narcy, declare as follows:

1. I am the President of the Minnesota Asian Pacific American Bar Association ("MNAPABA"). I submit this declaration based on my personal knowledge and in support of the Amicus Curiae Brief filed in support of Plaintiffs.

2. MNAPABA is a non-profit, nonpartisan organization dedicated to promoting and supporting the personal and professional development of Asian American and Pacific American ("APA") attorneys, judges, and law students in Minnesota. MNAPABA serves as an advocate for the rights of the APA legal community, promotes equal access to justice, and works to advance growth, mentorship, retention, promotion, and recognition of APA attorneys across all sectors of the legal profession.

3. MNAPABA represents approximately 260 attorneys who practice throughout Minnesota in a wide range of legal settings, including private practice, government service, nonprofit organizations, and the judiciary. Our membership reflects a broad range of racial, ethnic, religious, cultural, immigration, and professional backgrounds, including U.S. citizens, naturalized citizens, lawful permanent residents, and individuals from mixed-status families.

4. As President of MNAPABA, I am responsible for overseeing the organization's mission-driven programs, setting strategic priorities, leading board meetings, and ensuring that MNAPABA's activities align with its values of professional excellence, equity, and access to justice. I regularly attend MNAPABA events, which occur approximately one to three times per month, and I frequently communicate directly with members through meetings, correspondence, and informal conversations to listen to their concerns, understand their experiences, and advocate for the interests that our organization represents.

5. Since the U.S. Department of Homeland Security ("DHS") significantly increased federal immigration enforcement activities in Minnesota, including through the deployment of agents from the U.S. Border Patrol and U.S. Immigration and Customs Enforcement, I have heard directly from numerous MNAPABA members expressing troubling experiences and heightened fear consistent with racial profiling and intimidation.

6. Members have reported incidents including, but not limited to, the following:

   a. Federal agents knocking door-to-door in residential neighborhoods and asking broadly whether there were any "Asians" living in the area.

   b. ICE or Border Patrol vehicles closely following members' cars for extended periods of time, ranging from approximately five to twenty minutes, without any apparent lawful justification.

   c. Increased hostility and intimidation toward MNAPABA members of color in public spaces, particularly outside the Twin Cities metropolitan area, emboldened by the federal government's recent activities. In one instance, a member traveling in northern Minnesota was approached aggressively by a man in a restaurant in a manner that appeared intended to threaten or intimidate. In another instance, a darker-skinned MNAPABA member was subjected to racial slurs and told by

another patron that they "hated Native Americans." Members have also reported a noticeable increase in hostile stares and unwelcoming treatment in public settings.

7. Further, members expressed fear of volunteering for, accepting, or continuing work involving immigration or immigrant clients, out of concern that they themselves may become targets of retaliation or heightened scrutiny by federal agents. Some members expressed fear that they could be detained, questioned, or harmed regardless of citizenship status, and that such encounters could escalate into injury, arrest, or unfounded criminal charges.

8. As a result of these fears, many MNAPABA members have altered their professional and personal behavior in significant ways. Members have reported:

   a. Reducing or eliminating attendance at in-person work, court, networking, or professional development events,

   b. Reduced ability to focus on work due to persisting fear for self, children, and family members,

   c. Avoiding leaving their homes except when absolutely necessary and relying on friends or family members—often white-presenting spouses, neighbors, or colleagues—to complete essential tasks such as grocery shopping or errands,

   d. Carrying passports, naturalization certificates, or other proof of citizenship at all times when leaving their homes,

   e. Avoiding air travel or long-distance driving for the purpose of work, vacation, or other personal reasons,

   f. Relocating out of Minnesota, and in some cases out of the United States entirely, due to fear for their safety,

   g. Law students, particularly international students, expressing fear of attending classes in person,

   h. Being diagnosed with anxiety or beginning anxiety medication as a direct result of the stress and fear caused by these conditions.

9. These impacts have directly interfered with MNAPABA members' ability to practice law and serve clients. For example, one MNAPABA member represents a pro bono client who is a lawful permanent resident seeking naturalization. Despite having held a green card for decades and having no criminal history other than minor traffic violations, the client has expressed being "frightened every single day" and experiencing severe anxiety since the increased enforcement activities began. The member has reported that the client's fear has made it significantly more difficult to effectively pursue the naturalization process. That

same member, among others, has expressed personal fear that continuing to represent immigration clients could expose them to retaliation or targeting by federal agents.

10. Another member reported canceling planned business travel that would have involved visiting and defending their employer, the type of opportunity that is important for professional advancement and relationship-building, due to fear of being unlawfully detained or injured if traveling alone as a person of color, despite being a U.S. citizen.

11. The effects described above undermine MNAPABA's mission and harm the administration of justice in both the short and long term. In the short term, MNAPABA members and the wider APA community lose opportunities for professional visibility, mentorship, leadership, and advancement. Reduced in-person engagement harms relationships with employers, colleagues, clients, and the broader legal community. It also creates a chilling effect on members' willingness to speak out, advocate, or engage in constitutionally protected activity.

12. In the long term, these conditions contribute to a loss of diversity in the legal profession and broader community. Members have reported advising their children to pursue education abroad rather than at U.S. institutions, which would result in long-term losses to the country's educational system, workforce, and economy. The absence of diverse role models in legal professional and educational spaces further diminishes opportunity and reverses decades of progress toward equal representation.

13. Many MNAPABA members come from communities with histories of government-sponsored violence, persecution, or forced displacement, including Hmong and Vietnamese refugee communities. For many of these members, even as attorneys, reports of widespread racial profiling, unchecked enforcement, and fear of detention—even for U.S. citizens and lawful residents—reopen old wounds and deepen a sense of vulnerability. As a result, members' fear is intensified, and their confidence that their constitutional rights, due process, and other legal safeguards have diminished.

14. This declaration is offered to provide the Court with information regarding the effects of the challenged conduct on attorneys, their clients, and the administration of justice in Minnesota, from the perspective of MNAPABA that serves those attorneys.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 31st day of January, 2026, in Ramsey County, Minnesota.

*Valerie Narcy*
Valerie Narcy
President
Minnesota Asian Pacific American Bar Association